UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>SNEXDXB B.V.,<br><br>        Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 19-_____ (___)<br><br>Recognition Request Pending |

**DECLARATION OF P.E.M. SCHOL
IN SUPPORT OF VERIFIED PETITION FOR RECOGNITION
UNDER CHAPTER 15 AND FOR ADDITIONAL RELIEF UNDER 11 U.S.C. § 1521**

P.E.M. Schol, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.  I am over the age of 18, citizens of The Netherlands, and, if called upon, could testify to all matters set forth in this declaration, except for those portions specified as being otherwise.

2.  In my capacity as duly authorized Insolvency Administrator and putative foreign representative of SNEXDXB B.V.[1] ("Starneth"), in Starneth's pending insolvency proceeding in the District Court of Overijssel, The Netherlands (the "Dutch Court"), Case No. F. 08/19/176 (the "Dutch Insolvency Proceeding"), I hereby submit this declaration in support of the *Verified Petition for Recognition Under Chapter 15 and for Additional Relief Under 11 U.S.C. § 1521* (the "Petition for Recognition") filed concurrently herewith.

3.  Matters stated in this declaration that are statements of fact and that are based upon my personal knowledge are true and correct. Matters stated in this declaration that are statements of fact and that are not based upon my personal knowledge but that are derived from the business records of Starneth, other documents and/or information which became available

---

[1] SNEXDXB B.V. was formerly known as Starneth B.V.

Pg 2 of 18

during Starneth's insolvency proceedings are true to the best of our information and belief.

4.  I am an attorney at the law firm of Schol & Gorter, licensed to practice law in The Netherlands and concentrate my practice in corporate workouts and insolvency. I have been practicing law in The Netherlands for 12 years, providing domestic and foreign clients with legal advice on restructurings and liquidations, preparing insolvency plans, administering insolvency proceedings, handling out-of-court liquidations and serving as the insolvency administrator for various entities. I regularly act as insolvency administrator for entities in Dutch insolvency proceedings.

5.  I also completed the Association of Insolvency Law Lawyers (*Vereniging van Insolventierecht Advocaten*) ("INSOLAD") / Grotius specialization course in insolvency law and am admitted as full members of INSOLAD.[2]

### COMMENCEMENT OF THE CHAPTER 15 PROCEEDING

6.  The Insolvency Administrator has filed a petition for relief under Chapter 15 of Title 11 of the United States Code on behalf of Starneth in this Court. The purpose of this Chapter 15 proceeding is to obtain the benefits of the automatic stay in the United States pending administration of the Dutch Insolvency Proceeding. In order to do so, the Insolvency Administrator filed the Petition for Recognition, seeking an order recognizing him as the foreign representative of Starneth, recognizing the Dutch Insolvency Proceeding as a "foreign main proceeding," and granting related relief.

7.  Pursuant to applicable Dutch law, in particular article 29 of the Dutch Bankruptcy Act, upon the declaration of the bankruptcy of the debtor, all pending legal actions brought

---

[2]   *INSOLAD Prospective Membership*, http://www.insolad.nl/lidmaatschap.html (last visited on Oct. 10, 2012) (Full membership in INSOLAD requires an attorney to have been admitted to practice for at least seven years, to have spent an average of 400 "eligible hours" practicing insolvency law and undergoing training in the three years prior to application for membership, and the completion, including passing a final examination, of the INSOLAD / Grotius specialization course.).

against the debtor are stayed. Specifically, article 29 provides:

> To the extent that lawsuits (legal actions), pending at the moment of the declaration of bankruptcy, have as objective the performance of an obligation from the liquidation estate, the legal proceedings shall be stayed after the bankruptcy order and will only be continued if verification of the claim is disputed. In such case the person disputing the verification will become a party to the proceedings instead of the bankrupt debtor.

8. Starneth is a defendant in litigation pending in the United States District Court for the Southern District of New York, encaptioned *New York Wheel Owner LLC v. Mammoet-Starneth LLC, Mammoet USA North Inc., Starneth LLC, Mammoet USA Holdings, Inc., Mammoet Holding B.V. and Starneth B.V., Case No. 17-cv-4026-JMF (S.D.N.Y).* (the "US Litigation"). The US Litigation relates to a failed project to design, engineer and construct a giant observation wheel in Staten Island, New York. The plaintiffs in the US Litigation are seeking monetary damages against Starneth for, *inter alia*, breach of contract and fraudulent inducement. The plaintiffs in the US Litigation have refused to stay the US Litigation against Starneth and instead have articulated their view that the only way a foreign bankruptcy can result in a stay of US based litigation is to have the foreign bankruptcy recognized by a United States bankruptcy court under Chapter 15 of the Bankruptcy Code.[3] Accordingly, the Insolvency Administrator has filed this Chapter 15 case in order to obtain a stay of the US Litigation.

**STARNETH'S BUSINESS**

9. Starneth is a private limited liability company organized under Dutch law, listed with the Chamber of Commerce in Hengelo, 0verijssel, The Netherlands under number 08149266, having its registered office in Hengelo, The Netherlands and registered place of business at Archimedesstraat 12, 3316AB Dordrecht, The Netherlands.

10. Starneth has utilized its present name since June 13, 2019. Starneth was

---

[3] A copy of plaintiffs' letter articulating this view is attached hereto as **Exhibit B**.

3

previously known as Starneth B.V.

11. Prior to the Dutch Insolvency Proceeding, Starneth was in the business of carrying out technical engineering, design and consultancy activities. Starneth developed, produced, rented and traded in industrial machines, drives and other technical installations.

12. Starneth stopped operating as a going concern business before the Dutch Insolvency Proceeding was opened.

### COMMENCEMENT OF THE DUTCH INSOLVENCY PROCEEDING

13. In 2013, Starneth was commissioned by Hyundai Engineering and Construction Co. Ltd ("Hyundai"), to build the world's largest ferris wheel in Dubai (the "Dubai Wheel"). Starneth agreed to supply the design for a fixed price in addition to a number of others services.

14. In 2014, a dispute arose between Starneth and Hyundai due to payment problems. This dispute ended in the dissolution of the agreement between the parties. The parties later entered into an arbitration in Singapore, which led to an arbitration award in favor of Hyundai. The arbitration ruling requires Starneth to pay an award of $2,985,603.17 plus interest of $685,360. While Starneth does not agree with the ruling, an appeal is not allowed.

15. Starneth is not able to pay Hyundai as per the arbitration ruling. It has no other assignments or commissions, other than the Dubai Wheel. As such Starneth filed for bankruptcy.

16. On June 26, 2019, the Dutch Court entered a verdict declaring Starneth bankrupt (vonnis tot faillietverklaring) under the Dutch Bankruptcy Act. On June 26, 2019, the Dutch Court entered a judgment (the "Insolvency Judgment," a certified copy of which and an English translation are attached as **Exhibit A**), which, *inter alia*, revoked the provisional suspension of payments, declared Starneth bankrupt, and appointed Mr. P.E.M. Schol as Insolvency

Administrator. (Insolvency Judgment, p. 1).

17. Judge Mr. M.L.J Koopmans was appointed as "Supervisory Judge" in the Dutch Insolvency Proceeding. The Supervisory Judge is an arm of the Dutch Court. The Supervisory Judge's role is to monitor, consider and approve certain of the Insolvency Administrator's actions in the Dutch Insolvency Proceeding, as required by Dutch law. The Supervisory Judge has approved the Insolvency Administrator's filing the petition for relief seeking recognition under Chapter 15 of the Bankruptcy Code.

18. A supervisory judge has the primary responsibility for overseeing an insolvency administrator's actions in a Dutch insolvency proceeding, such that the Dutch Court gets directly involved in only limited circumstances. The most common examples of direct involvement by the Dutch Court are to approve an insolvency administrator's:

- Assumption of agreements which have either not been performed or only performed in part by both the debtor and its counterparty to that agreement, Dutch Bankruptcy Act, § 37;
- Terminating commercial leases, id. at § 39;
- Terminating employment contracts, id. at § 40;
- Entering into settlement agreements, id. at § 104; and
- Private sale of assets – as opposed to by way of (public) execution, id.

19. Starneth ceased its business activities prior to the Insolvency Judgment. The Insolvency Administrator has been winding down Starneth's business and collecting and liquidating its assets for the benefit of creditors.

20. While no deadline to file claims has been set in the Dutch Insolvency Proceeding, the Insolvency Administrator sent a letter to all known creditors notifying them of the Dutch Insolvency Proceeding and inviting them to file their claims.

5

21. The fulfillment of certain of the Insolvency Administrator's tasks is supervised by a "Supervisory Judge." The Insolvency Administrator obtained the approval of the Supervisory Judge to file this Chapter 15 proceeding.

**STARNETH'S BANKRUPTCY ESTATE**

22. Section 1(1) of the Dutch Bankruptcy Act provides that a debtor who has ceased to pay debts as they become due shall be declared bankrupt by court order on the petition of the debtor or one or more of its creditors. Generally speaking, the goal of a Dutch insolvency proceeding is to liquidate the assets of the debtor for the benefit of creditors. The Insolvency Administrator has been winding down Starneth's business and collecting and liquidating its assets for the benefit of creditors.

23. The most important effect of the Dutch Insolvency Proceeding is that Starneth lost its right to dispose of and control its assets pursuant to Section 23 of the Dutch Bankruptcy Act. Instead, such disposition and control is vested in the Insolvency Administrator, which I understand is akin to powers vested in a Chapter 7 trustee for a company in liquidation under the Bankruptcy Code.

24. The Insolvency Administrator's control is over the entire estate of Starneth as of the date of its declaration as bankrupt, which includes any and all of Starneth's assets, including any assets located outside The Netherlands, as well as all assets that Starneth acquires during the Dutch Insolvency Proceeding. *Id.* at § 20. I am informed that this is similar to the concept of creation of an estate and property of the estate under Section 541 of the Bankruptcy Code. Under Dutch law, all attachments made by creditors on the assets of Starneth prior to the Dutch Insolvency Proceeding are automatically lifted and replaced by a general attachment on Starneth's bankrupt estate.

**CLAIMS PROCESS IN THE DUTCH INSOLVENCY PROCEEDING**

25. All creditors of Starneth (including those located in the United States) are entitled to file claims in the Dutch Insolvency Proceeding and have equal rights (*paritas creditorum*), subject to any applicable right of preference, priority or security, which we understand is generally similar to the claims allowance process and priority of distribution under the Bankruptcy Code. While no deadline to file claims has been set, the Insolvency Administrator sent a letter to all known creditors notifying them of the Dutch Insolvency Proceeding and inviting them to file their claims accompanied by invoices and other relevant documentation, and to indicate whether: (i) any special rights apply (such as a retention right), and/or (ii) any applicable preference or priority applies, and if so, the ranking of such preference or priority with supporting evidence and authorities.

26. If a distribution to general unsecured creditors is expected, the Supervisory Judge will establish a deadline to file claims and a date on which a creditors meeting for the verification of their claims (verificatievergadering) will be held, which meeting is presided over by the Supervisory Judge and serves to finalize the list of creditors. If the Insolvency Administrator disputes a claim, she shall contact the creditor and may require the submission of any missing documents and/or the inspection of the creditor's books and records. If a claim is disputed and the Supervisory Judge is unable to reconcile the dispute, the Supervisory Judge shall refer the dispute to the Dutch Court for adjudication.

27. Pursuant to the Dutch Bankruptcy Act, if the Supervisory Judge considers there to be sufficient funds available, he will order a distribution to creditors whose claims have been acknowledged. In order to do so, the Insolvency Administrator shall prepare a distribution plan for approval by the Supervisory Judge. The distribution plan is subject to objection by creditors

of Starneth and made available for inspection free of charge at the clerk's office of the Dutch Court.

28. Assuming it is likely that the proceeds of the assets of Starneth will be insufficient to make distributions to general unsecured creditors, the Supervisory Judge may order, upon the request of the Insolvency Administrator or ex officio, that general unsecured claims need not be administered or adjudicated. It is unclear whether the liquidation of Starneth's assets will enable a distribution to general unsecured creditors. If no distribution to general unsecured creditors is expected, the Dutch Bankruptcy Act provides for a simplified procedure for the verification of and settlement of disputes regarding preferred and priority claims only.

29. Secured creditors' claims are generally not affected by a Dutch insolvency proceeding.

30. Unless a composition -- an agreement with creditors which provides for (partial) payment of creditors in full satisfaction of their claims -- is reached and approved by the Dutch Court, Starneth will be dissolved and cease to exist once the Dutch Insolvency Proceeding is completed.

### CREDITORS AND CENTER OF MAIN INTEREST

31. The Dutch Court explicitly held in the Insolvency Judgment that "the centre of the debtor's main interests is situated in The Netherlands." (Insolvency Judgment, p. 1).

32. I am informed that principles of comity and cooperation among courts under United States law and embodied by Chapter 15 favor deference to the Dutch Court's holding that The Netherlands is the center of Starneth's main interests. There are independent grounds on which this Court can base a holding that The Netherlands is the center of Starneth's main interests even without such deference, however.

33. While Starneth had some business relationships with United States counterparties, the bulk of Starneth's debtor-creditor relationships involve entities that are not based in the United States. For example, of the five creditors known to the Insolvency Administrator, only one is domiciled or headquartered in the United States.

34. I am informed that a United States court may apply a factor analysis to determine the center of Starneth's main interests, including: (a) the location of Starneth's headquarters, (b) the location of Starneth's management, (c) the location of Starneth's primary assets, and (d) the location of the majority of Starneth's creditors who would be affected by the case.

- Starneth was organized and registered in The Netherlands;

- Starneth's main office was located at Archimedesstraat 12, 3316AB Dordrecht, The Netherlands;

- Starneth was primarily controlled by management located at its principal place of business in The Netherlands;

- The majority of Starneth's employees resided in The Netherlands;

- The majority of Starneth's assets are located in The Netherlands;

- 80% of Starneth's creditors are located in The Netherlands, which creditor concentration is more than in any other country; and

- Starneth maintained its bank accounts in The Netherlands.

**JURISDICTION OF THE DUTCH COURT**

35. Pursuant to the European Insolvency Regulation dated May 29, 2000, in conjunction with the Dutch Bankruptcy Act, the Dutch Court had jurisdiction to declare Starneth bankrupt.

36. Pursuant to Section 20 of the Dutch Bankruptcy Act, the Dutch Insolvency Proceeding serves to administer all assets in the bankrupt estate, wherever those assets are located in the world, as of the date Starneth was declared bankrupt. As such, the Insolvency

9

Administrator is empowered to preserve, collect and liquidate all assets of Starneth for distribution through the Dutch Insolvency Proceeding.

37. Pursuant to Section 203 of the Dutch Bankruptcy Act, a creditor without a priority or preference right who, after the commencement of the Dutch Insolvency Proceeding, recovered separately on a claim, either in whole or in part, from assets of the debtor situated outside of The Netherlands, must pay the amount so recovered into Starneth's bankrupt estate.

### DUTIES OF THE INSOLVENCY ADMINISTRATOR

38. The Insolvency Administrator alone is empowered to pursue and enforce the rights, claims and interests of Starneth and act in its name, including in legal proceedings concerning rights or obligations of the bankrupt estate. Dutch Bankruptcy Act, §§ 25 and 68. Legal proceedings concerning rights or obligations of the bankrupt estate are also instituted by an insolvency administrator in the name of the bankrupt company. *Id.* at §§ 25, 27 and 28.

39. Pursuant to the Dutch Bankruptcy Act, an insolvency administrator is required to:

(i) Identify and prepare an inventory and assessment of value of assets of the bankrupt estate. The assessment of the value may be made by the Insolvency Administrator, subject to the approval of the Supervisory Judge, id. at § 94(1 and 2);

(ii) Prepare a statement listing the nature and amount of the assets and debts of the bankrupt estate, the names and addresses of known creditors and the amount of the claims of each of them, id. at § 96; and

(iii) Take direct custody of all money, valuables, transferable securities and other valuable instruments comprising assets of the bankrupt estate, unless some other means of safe custody has been determined by the Supervisory Judge, id. at § 102(1).

40. The Insolvency Administrator must report quarterly on the status of the affairs of the bankrupt estate and lodge his report with the Dutch Court, where it is available for public inspection free of charge. *Id.* at § 73a(1)

41. In satisfaction of his duties, the Insolvency Administrator has, inter alia,

10

(i) prepared a preliminary inventory of assets of the bankrupt estate, (ii) prepared a statement listing the nature and amount of the assets and liabilities of the bankrupt estate, the names and addresses of known creditors and the amount of the claims of each of them, (iii) prepared and filed with the Dutch Court the quarterly reports, (iv) ensured the suspension of pending actions, begun acting on Starneth's behalf in two actions and settled another action, (v) secured assets of Starneth, (vi) sold assets, and (vii) terminated Starneth contracts, including employment contracts, leases and insurance contracts.

### RELIEF UNDER SECTION 1521 OF THE BANKRUPTCY CODE

42. The Insolvency Administrator is aware of a litigation in the United States, namely the US Litigation. I understand that Section 1521 of the Bankruptcy Code permits the Court to grant the Insolvency Administrator appropriate relief, including staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a). The Insolvency Administrator has requested such relief in the Petition for Recognition. The relief is appropriate in order to maximize the recovery to creditors through distributions in the Dutch Insolvency Proceeding.

43. This request for additional relief under Section 1521 of the Bankruptcy Code comports with the Insolvency Administrator's duties to administer and monetize Starneth's assets for distributions to creditors in the Dutch Insolvency Proceeding.

Executed this 17th day of December 2019 in Enschede, The Netherlands.

_____

P.E.M. Schol, in his capacity as Insolvency Administrator of SNEXDXB B.V.

# Exhibit A

# JUDGMENT

**DISTRICT COURT OF OVERIJSSEL**

Supervision Team - Bankruptcies
Court location Almelo

Bankruptcy numbers: C/08/19/176-177-178-179 F
Ruling date: June 26, 2019

**Judgment for bankruptcy filing**

District Court of Overijssel, Civil Division.

A petition for bankruptcy was filed by the debtors.

This petition was discussed during the hearing.
On behalf of the petitioners, E. Poelenije, Esq., with offices in Enschede, has appeared.

**Statement of grounds**

The court finds the following.

Facts and circumstances that show that the debtors are in the condition of having ceased paying have appeared, as they leave more debts unpaid with more than one creditor.

Now that the center of the main interests of the debtors is in the Netherlands, this court is authorized to open these main proceedings pursuant to the provisions of the Bankruptcy Act and Regulation (EU) 2015/848 regarding insolvency proceedings.

**The decision**

The court:

- declares

    the limited liability companies
**176: SNEXDXB B.V.,**
    previously doing business under the name **Starneth B.V.,**
    registered in the Commercial Register of the Chamber of Commerce
    under number 08149266,
    with registered offices in Hengelo (OV),
**177: SNEXNYW B.V.,**
    previously doing business under the name **Starneth Europe B.V.**,
    registered in the Commercial Register of the Chamber of Commerce
    under number 63718758,
    with registered offices in Enschede,
**178: Railneth Holding B.V.,**
    registered in the Commercial Register of the Chamber of Commerce
    under number 62864955,

Bankruptcy numbers: C/08/19/176-177-178-179 F                                        page 2

with registered offices in Enschede and

**179: Wonderneth B.V.,**
registered in the Commercial Register of the Chamber of Commerce
under number 64454134,
with registered offices in Enschede,
all with offices at 3316 AB Dordrecht, Archimedesstraat 12,

bankrupt;

- appoints as bankruptcy judge the member of this court M.L.J. Koopmans, Esq. and appoints as trustee P.E.M. Schol, Esq., attorney in Enschede;
- orders the trustee to open the letters addressed to the bankrupt companies.

Issued and pronounced in Almelo during the public hearing of June 26, 2019 at 11:16 AM by M.C. Bosch, Esq., member of the aforementioned division in the presence of M.Y. Kroeze, registrar.

# Exhibit B

# DOVEL & LUNER
LLP

201 Santa Monica Blvd.,
Suite 600
Santa Monica,
California 90401
TEL 310.656.7066
FAX 310.656.7069

August 29, 2019

VIA ECF

The Honorable Jesse M. Furman
U.S. District Court, Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

Re:   Effect of Starneth B.V. Dutch bankruptcy, *New York Wheel Owner, LLC v. Mammoet-Starneth LLC, et al.*, No. 17-CV-4026 (JMF) (S.D.N.Y.)

Dear Judge Furman:

Defendant Starneth B.V. previously notified the Court that it was declared bankrupt in the Netherlands. Dkt. 198. Pursuant to the Court's order, we write on behalf of plaintiff and defendants Mammoet USA North Inc., Mammoet USA Holdings, Inc. (n/k/a Mammoet Americas Holding, Inc.), Mammoet Holding B.V. and Starneth LLC,[1] to provide the their "views of the effect, if any, of the Dutch bankruptcy on these proceedings." Dkt. 199.

### Plaintiff New York Wheel Owner, LLC's view

New York Wheel's view is that there is no stay or any other effect. For a foreign bankruptcy to result in a stay, the bankruptcy must be recognized by a United States bankruptcy court, under Chapter 15 (11 U.S.C. §1515) of the Bankruptcy Code. *Reserve Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.*, No. 09 CIV. 9021, 2010 U.S. Dist. LEXIS 42216, at *5 (S.D.N.Y. Apr. 29, 2010) ("What case law there is, however, makes clear that foreign [bankruptcy] representatives must be recognized under Chapter 15 to seek a stay from a federal court"); *Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, No. 14 C 8196, 2018 U.S. Dist. LEXIS 170271, at *6-7 (N.D. Ill. Oct. 2, 2018) ("CDI must comply with Chapter 15 of the U.S. Bankruptcy Code to receive recognition of its foreign bankruptcy and the corresponding relief

---

[1] Counsel for the above-mentioned defendants do not represent Mammoet-Starneth LLC, which is represented in this action by separate counsel. Counsel for the above-mentioned defendants further have advised that they have not, at this point, been authorized by the Dutch liquidator to speak on behalf of Starneth B.V. and, accordingly, are not presently in a position to make any statements on behalf of Starneth B.V. to the Court.

[the stay] it seeks") (collecting authority).  To our knowledge, the Starneth B.V. bankruptcy has not been recognized in the United States, under Chapter 15.  Thus, there can be no stay.

**Defendants Mammoet USA North Inc.'s, Mammoet USA Holdings, Inc.'s (n/k/a Mammoet Americas Holding, Inc.), Mammoet Holding B.V.'s and Starneth LLC's view**

The view of the above-named defendants is that the issue of the effect, if any, of Starneth B.V.'s bankruptcy is premature at this juncture in light of the Court's August 27, 2019 ruling indicating its desire to "make a fresh start."  Rather than reinstate the previously dismissed claims, the Court ordered NYW to file an amended pleading "making clear what claims and parties remain or have been added" and for "any remaining or new Defendants to file new answers or motions to dismiss…"  Consequently, NYW should file its amended pleading as directed and then the Court and the parties will know what claims have been asserted against which parties and also be apprised of any actions that the Liquidator put in place by the Dutch Bankruptcy court may in the interim have taken with respect to this litigation.  At that point, the matter may be briefed as necessary and address any claims actually asserted against Starneth B.V.  Such briefing would include the effect of the Dutch bankruptcy and NYW's arguments under chapter 15, if and as then applicable.

Dated: August 29, 2019

Respectfully,

*/s/ Jonas Jacobson*
Jonas Jacobson
Dovel & Luner, LLP
Counsel for Plaintiff New York Wheel Owner, LLC

cc: All Counsel of Record (via ECF)